## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIC PETERS, | : | Civil No. 1:24-cv-00568 |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| JESSICA SAGE, | : | |
| | : | |
| Respondent. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

Before the court is Eric Peters' ("Petitioner") petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1.) Petitioner is a federal inmate currently housed at the Lewisburg Prison Camp located at the Federal Correctional Institution in Lewisburg, Pennsylvania ("FCI-Lewisburg"). His petition alleges a violation of due process in the course of a disciplinary proceeding that resulted in the loss of 41-days good time credit, his expulsion from the Residual Drug Abuse Treatment Program ("RDAP"), making him ineligible for the one-year sentence reduction afforded inmates who complete the program, and an increase in his PATTERN risk score for recidivism which rendered him ineligible for application of his earned time credits pursuant to the First Step Act ("FSA"). (*Id.*) For the following reasons, the court will deny the petition and close the case.

## BACKGROUND AND PROCEDURAL HISTORY

On February 23, 2023, this court sentenced Petitioner to thirty-seven months of imprisonment after he pled guilty to conspiracy to distribute and possess with the intent to distribute cocaine hydrochloride. *United States v. Peters*, 1:21-CR-273-6 (M.D. Pa. Feb. 23, 2023). The court also recommended Petitioner for the RDAP program in the sentencing documents. *Id*. Petitioner surrendered to the custody of the Bureau of Prisons ("BOP") on March 9, 2023. (Doc. 8-3, p. 4.)[1]

On July 28, 2023 at 9:56 a.m., Petitioner was issued an incident report alleging that on that day at 8:54 a.m., through the use of a TRULINCS report, staff became aware that an unauthorized device had been plugged into Petitioner's Score 7C tablet four times at 11:00 a.m. on July 23, 2023 and two times at 11:35 a.m. on July 24, 2023. (Doc. 8-4.) The TRULINCS report identified the unauthorized device using number VID_04E8&PID_6860, which was correlated to a Galaxy A5 cellular phone from the Samsung Electronics Co. (*Id*.) The report also stated that Petitioner purchased a Score 7C tablet on May 10, 2023 at 11:42 a.m. (*Id*.) The report concluded that Petitioner was plugging a contraband cell phone into his tablet to either charge the cell phone or circumvent security on the tablet. (*Id*.)

---

[1] For the ease of reference, the court uses the page numbers from the CM/ECF header.

On July 31, 2023, Petitioner appeared before the Unit Disciplinary Committee ("UDC"). (*Id*., p. 3.) Petitioner stated that he was not present or in the possession of his tablet when the cell phone was plugged into the tablet. (*Id*.) Petitioner was advised of his rights and provided a copy of the incident report. (*Id*., p. 4.) Petitioner did not request a review of the camera footage and declined the opportunity to identify a witness. (*Id*.) The UDC recommended a Discipline Hearing Officer ("DHO") apply all appropriate sanctions to deter future negative behavior. (*Id*., p. 3.) That same day, Petitioner was provided a copy of the Inmate Rights at Discipline Hearing form. (Doc. 8-5.) These rights include the right to a full-time member of staff to represent him before the Discipline Hearing Officer and the right to call witnesses and present evidence on his behalf. (*Id*.)

A hearing was held on August 3, 2023. (Doc. 8-7.) Petitioner declined staff representation at the hearing and declined to request any witnesses. (*Id*., p. 2.) At the hearing, he presented no documents for the DHO to consider, made no complaint of procedural error, and stated the following:

> I did not do this. I do not have a cell phone. I did not plug a cell phone into my tablet. I came back to the RDAP around 10:30 AM for lunch. I plugged in my tablet at the charging station. I left for lunch at around 10:45 AM. I returned from lunch around 11:15 AM. When I went to get my tablet at the charging station, my tablet was locked. I thought it was because it needed to be revalidated, which we have to do every two weeks, so I went and plugged it into the computer, and it unlocked it and it worked.

(*Id.*)  He also stated that "the crazy thing is the same thing happened the next day," that he "thought there was a glitch with the tablet," and "went and plugged it into the computer and it unlocked it and it worked."  (*Id.*)  Petitioner also waived his right to present witnesses.  (*Id.*, p. 3.)  The DHO introduced the TRULINCS Security Event Report from July, 27, 2023, the Bureau of Prisons-approved open-source intelligence search report from July 27, 2023, and the Federal Bureau of Prisons Sales Invoice/Receipt for the Score 7C tablet dated May 10, 2023.  (*Id.*)  The DHO found that the act was committed as charged relying on the above-identified evidence and the written account of the reporting officer.  (*Id.*, pp. 3–5.)  As a sanction, Petitioner lost 41 days good time conduct with 45 days disciplinary segregation, the loss of tablet privileges for one year, the loss of telephone privilege for 10 months, and the loss of visiting privileges for 10 months.  (*Id.*, p. 5.)

It appears that Petitioner appealed the DHO's findings through the Central Office Administrate Remedy Appeal, and the appeal was denied.  (Doc. 1-2.)[2]

Petitioner filed the instant petition in April of 2024.  (Doc. 1.)  Petitioner alleges that a violation of due process occurred by (1) a lack of evidence; and (2) the BOP's failure to follow proper disciplinary procedures.  (Doc. 1.)

---

[2] Respondent does not set forth the affirmative defense of administrative exhaustion.  (Doc. 8.)  Therefore, the court will not address the administrative appeal of the DHO report further.

On May 9, 2024, the court issued an order serving Respondent with a copy of the petition.  (Doc. 4.)  On June 4, 2024, Respondent filed a response.  (Doc. 8.) Petitioner has not filed a traverse.

## VENUE

A § 2241 petition must be filed in the district where the petitioner is in custody.  *See Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 494–95 (1973) ("The writ of habeas corpus does not act upon the person who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody.")  Petitioner is housed at FCI-Lewisburg in Union County, Pennsylvania, which is located in this district.  *See* 28 U.S.C. § 118(b).  Therefore, this court is the proper venue for the action.

## DISCUSSION

Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law.  *Torres v. Fauver*, 292 F.3d 141 (3d Cir. 2002).  It is well-settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply."  *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court found that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time.  *Id*.  Since Petitioner's sanctions did include the loss of good conduct time, Petitioner has

identified a liberty interest in this matter.  Petitioner alleges his due process right

was violated based on a lack of evidence to support the DHO finding and a failure

to follow procedural due process.

### A. The DHO's Determination Was Supported by the Requisite Degree of Evidence.

Where, as here, a prisoner challenges a disciplinary proceeding that deprived

him of good-time credits, "the requirements of due process are satisfied if some

evidence supports the decision by the prison disciplinary board to revoke [such]

credits." *See Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S.

445, 455 (1985).  In other words, "[t]his standard is met if there was some

evidence from which the conclusion of the [disciplinary board] could be

deduced[.]" *See id*. (citation and internal quotation marks omitted).  Thus,

determining "whether this standard is satisfied does not require examination of the

entire record, independent assessment of the credibility of witnesses, or weighing

of the evidence." *See id*.  Rather, "the relevant question is whether there is any

evidence in the record that could support the conclusion reached by the

disciplinary board." *See id*. at 455–56 (emphasis added) (citations omitted).

The United States Supreme Court has declined to embrace "a more stringent

evidentiary standard as a constitutional requirement." *See id*. at 456.  And, in

declining to do so, the Supreme Court has explained as follows:

> Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. *See Wolff*, 418 U.S., at 562–563[.] The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact. Revocation of good time credits is not comparable to a criminal conviction, *id*. at 556[,] and neither the amount of evidence necessary to support such a conviction, see *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), nor any other standard greater than some evidence applies in this context.

*See id*.

Here, Petitioner did not present documentary or witness evidence in his defense. (Doc. 8-7, p. 3.) Therefore, the court is left to consider the sufficiency of the evidence presented by the BOP. As set forth above, the DHO relied on the TRULINCS report, the open-source intelligence report, and the sales invoice/receipt for the Score 7C tablet. (Doc. 8-7, pp. 3–5.) In weighing the evidence, the DHO stated the following:

> An inmate who owns a Score 7C tablet is responsible to maintain the integrity and security of the tablet at all times. Inmates who fail to maintain the integrity and security of their Score 7C tablet are alone responsible and accountable for failing to do so. Therefore, an inmate alleging that he left his Score 7C tablet lying about unsecured and unattended where it was illicitly accessed or used by other inmates is not presenting a valid defense to the charge. An inmate who fails to maintain the integrity and security of their Score 7C tablet is held accountable for failing to do so in the same manner as an inmate who voluntarily gives or provides the tablet to other inmates for their use.

(*Id*., p. 5.)

In response, Petitioner alleges that since he is housed in a prison camp, he is not housed in a cell but in barracks and that the charging station is in a communal area that all inmates at the camp can access.  (Doc. 1, p. 2.)  He further alleges that leaving the tablets at the charging station unattended is a common practice at the prison camp.  (*Id*.)  Notably, Petitioner also alleges that lack of control over a tablet cannot equate to possession of a cellular phone.  (*Id*., p. 3.)

Petitioner had an opportunity to raise these issues in his DHO hearing, but did not.  Instead, the DHO had some evidence that Petitioner was in possession of a cell phone by demonstrating that Petitioner's tablet, which was deemed under his control, was connected to a cellular phone.  Under the Supreme Court precedent set forth above in *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, there is sufficient evidence to support the DHO decision.  Therefore, the petition cannot succeed on this argument.

**B. Petitioner was Provided the Requisite Procedural Due Process.**

Petitioner also alleges that he was denied procedural due process in the DHO hearing.  (Doc. 1, p. 4.)  Specifically, Petitioner alleges that the DHO was not impartial, that the open source intelligence reports and TRULINCS security event report were not provided to him even though he requested them, and that he was not provided notice of the charge early enough to prepare a defense prior to the hearing.  (*Id*, pp. 4–5.)

In *Wolff*, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. *Wolff*, 418 U.S. at 563-67.

The Bureau of Prisons has enacted specific procedures for disciplinary proceedings. 28 C.F.R. § 541.1, *et seq.* Under these procedures, a staff member charges a prisoner with committing a prohibited act by issuing an incident report. 28 C.F.R. § 541.5(a). The incident report ordinarily must be issued within 24 hours of the time the staff member became aware of the prisoner's involvement in the incident. *Id.* The incident is then investigated. *Id.* at § 541.5(b).

After the incident is investigated, the UDC reviews the incident report and takes one of the following actions: (1) finds that the prisoner committed the prohibited act charged and/or a similar prohibited act as reflected in the incident report; (2) finds that the prisoner did not commit the prohibited act charged; or (3)

refers the incident report to the DHO for further review. *Id*. at § 541.7(a).

Prohibited acts are separated into four categories based on severity: Greatest, High,

Moderate, and Low. *Id*. at § 541.3(a). If a prisoner is charged with a prohibited

act in the Greatest or High category, the UDC automatically refers the incident

report to the DHO for further review. *Id*. at § 541.7(a)(4).

In the instant case, it is clear from the record that Petitioner was afforded all

of the required procedural rights set forth in *Wolff*. He received written notice of

the disciplinary charges at least twenty-four hours prior to all four hearings; he

appeared at the hearings and made statements either refuting or admitting to the

charges; he was given the right to a staff representative, an opportunity to present

witnesses and provide documentary evidence (though he chose not to do so); and

he was given written statements explaining the DHO's decision in all four

hearings. *See Wolff*, 418 U.S. at 564–66. The court will now address Petitioner's

specific challenges in turn.

First, the court will address the alleged lack of impartiality of the DHO.

Petitioner has provided no argument in support of his assertion that he was denied

an impartial finder of fact. The petition only contains the following paragraph:

> An impartial fac (sic) finder is one whose mind is not already made up
> and can give a fair hearing. A fact finder who displayed a lack of
> impartiality by statements and actions at hearings or in connection with
> them cannot be considered impartial. Additionally, a fac (sic) finder is
> required to "consider in good faith the substance of the inmate's

defense." These things did not occur in the petitioner['|]s disciplinary hearing.

(Doc. 1, p. 4.)

The law provides: "the requirement of an impartial tribunal prohibits only those officials who have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in the circumstances underlying the charge from sitting on the disciplinary body." *Meyers v. Aldredge*, 492 F.2d 296, 306 (3d Cir. 1974). Here, nothing in the above paragraph demonstrates that this requirement was violated.

Second, the court will address Petitioner's alleged lack of access to the evidence. Petitioner alleges that "[c]ase law suggest evidence must be disclosed the prison with a charge so he is afforded an opportunity to respond to it before a decision is made." (Doc. 1, p. 4.) He further alleges that he was not provided the open source intelligence reports or the TRULINCS security event report when he requested them. (*Id.*)

Petitioner fails to cite to any of the caselaw he relies upon in making his assertions. (*Id.*) However, the court notes that under United States Supreme Court precedent, "a prisoner's right to produce evidence in his or her defense is limited only by the demands of prisoner safety and institutional order, as determined by the sound discretion of the prison authorities." *See Young v. Kann*, 926 F.2d 1396,

1400 (3d Cir. 1991).  The discretion that is afforded to prison officials in this

context is "quite broad[:]"

> We should not be too ready to exercise oversight and put aside the
> judgment of prison administrators ... [W]e must balance the inmate's
> interest in avoiding loss of good time against the needs of the prison,
> and some amount of flexibility and accommodation is required. Prison
> officials must have the necessary discretion to keep the hearing within
> reasonable limits and to refuse to call witnesses that may create a risk
> of reprisal or undermine authority, as well as to limit access to other
> inmates to collect statements or to compile other documentary
> evidence.

*See Young*, 926 F.2d at 1400 (quoting *Wolff*, 418 U.S. at 566).

As explained by the Third Circuit Court of Appeals, however, this discretion

"is not without limits[,]" and the deference owed to prison officials "does not

require ... that a reviewing court defer to the arbitrary denial of an inmate's limited

right[s]."  *See id*. (alterations in original) (citation and internal quotation marks

omitted); *Burns v. PA Dep't of Corr*., 642 F.3d 163, 173 (3d Cir. 2011) (explaining

that "[a]lthough prison officials are afforded deference regarding whether evidence

might be unduly hazardous or undermine institutional safety or correctional goals,

'the discretion afforded prison officials is not without limits'" (quoting *Kann*, 926

F.2d at 1400)).  As a result, a prisoner "should be allowed to . . . present

documentary evidence in his defense when permitting him to do so will not be

unduly hazardous to institutional safety or correctional goals."  *See Wolff*, 418 U.S.

at 566.

A number of federal courts have held that this limited right to present documentary evidence necessarily extends to a prisoner's limited right to access evidence that is central to his defense, particularly evidence that is potentially exculpatory, provided that disclosure of such evidence would not unduly threaten institutional safety or security. *See, e.g., Kann*, 926 F.2d at 1400–02 (holding that, absent valid security reasons, a prison official's refusal to produce documentary evidence that he relied on in finding a prisoner guilty of disciplinary charges violated the prisoner's due process rights to "present documentary evidence" and "marshal the facts in his defense" (citation and internal quotation marks omitted)); *Melnik v. Dzurenda*, 14 F.4th 981, 985 (9th Cir. 2021) (explaining as follows: "[i]f a prisoner must be allowed to present evidence in his defense, it necessarily follows that he must have some right to prepare for that presentation[;] [w]ith no access to the evidence that will be presented against him, a prisoner could neither build a defense nor develop arguments and evidence to contest the allegations at the disciplinary hearing"); *Lennear v. Wilson*, 937 F.3d 257, 269 (4th Cir. 2019) (stating that "an inmate's due process rights related to ... evidence has at least two dimensions: (A) the qualified right of access to such evidence and (B) the qualified right to compel official review of such evidence"); *Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992) (reiterating that "an inmate is also entitled to disclosure of exculpatory evidence, unless that disclosure would unduly threaten

institutional concerns" (citations omitted)); *Smith v. Massachusetts Dep't of Correction*, 936 F.2d 1390, 1401 (1st Cir. 1991) (observing that, "[i]f an inmate has a circumscribed right to present documentary evidence, logic dictates that he must also have some possible means for obtaining it"); *Meis v. Gunter*, 906 F.2d 364, 367 (8th Cir. 1990) (stating that "[inmates] have a right to reasonable access to information necessary to put on a defense, including prison documents ...").

Here, Petitioner does not allege that he made the request for the evidence prior to the DHO hearing. Instead, he states that "[d]espite requesting this documentation numerous times the petitioner was never furnished with a copy of these documents. At no time were these documents ever presented to the petitioner despite his request to review it so that he could prepare his defense; nor has he been able to obtain these documents to as of the date of this filing." (Doc. 1, p. 4.) Additionally, the record demonstrates that he did not request this evidence when he received the notice of the hearing. (Doc. 8-5.) Furthermore, when provided a copy of the incident report, there is no evidence that he requested a copy of the evidence. (Doc. 8-4.) In his intra-agency appeal, Petition states that he was not provided the evidence *at* the hearing despite requesting it. (Doc. 1-2, p. 4 *emphasis added*.) Therefore, there is no evidence that Petitioner requested this evidence prior to his DHO hearing, and no evidence of a due process violation.

Third, the court will address the alleged lack of notice prior to the hearing so as to allow Petitioner to prepare for his defense.  Petitioner alleges that while he was in solitary confinement, he was provided a copy of his disciplinary infraction on a Friday, and his hearing was held on the following Tuesday.  (Doc. 1, p. 5.) He alleges that he was not afforded an opportunity to mount a defense because he was in solitary confinement and the law library was inaccessible over the weekend. (*Id.*)

Both the Supreme Court in *Wolff* and the BOP policies require 24-hour notice prior to the hearing.  Here, notice was provided considerably more than 24 hours prior to the hearing.  Therefore, Petitioner's argument lacks merit.

## CONCLUSION

For the above stated reasons, the petition filed pursuant to Section 2241 will be denied and the case will be closed.

An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: December 30, 2024